SCHMIDT et al., Respondents v. PINE LAWN
MEMORIAL PARK, INC., Appellant

(198 N.W.2d 496)

(File No. 11023. Opinion filed June 20, 1972)

**Gene R. Bushnell,** of **Costello, Porter, Hill, Banks & Nelson,** Rapid City, and **Patrick H. Lacey,** Sioux Falls, for plaintiffs and respondents.

**Geo. A. Bangs,** of **Bangs, McCullen, Butler, Foye & Simmons,** Rapid City, for defendant and appellant.

WOLLMAN, Judge.

This is an intermediate appeal from an order disqualifying attorney Geo. A. Bangs and the members of the firm of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, from further participation in the lawsuit brought by plaintiffs against the defendants in this action.

In 1936, W. G. Lacey, now deceased, entered into a contract for deed with Pine Lawn Memorial Park, Inc. (Pine Lawn), a non-profit cemetery corporation, under the terms of which Lacey was to receive 50% (later reduced to 25%) of the sale price of each cemetery lot sold by Pine Lawn after the first 200 sales.

By a decree of distribution entered in 1954 in the Estate of W. G. Lacey, deceased, Ed H. Lacey and Angela E. McConville were each given an undivided one-half interest in the contract for deed described above. An undivided 4/10ths interest in the contract was sold by Ed H. Lacey and Angela E. McConville to American Memorial Park, Inc. (American Memorial).

In 1963 the State of South Dakota commenced condemnation proceedings to acquire for highway purposes a portion of the land covered by the contract for deed. The contract was silent as to the disposition of any condemnation award.

On August 13, 1963, a written agreement was entered into by Ed H. Lacey, Angela E. McConville, American Memorial, Pine Lawn and Mr. Bangs' law firm which provided that the Bangs firm was to be retained to represent all interested parties in the condemnation suit pending between the South Dakota Highway Commission and the parties to the agreement. The agreement further provided that of the first $12,000 of the award ultimately collected from the condemnation case 75% would be distributed to Pine Lawn, 10% to American Memorial and 15% to Ed H. Lacey and Angela E. McConville. The remainder of the award in excess of $12,000, after deducting the reimbursable cash expenses incurred by Pine Lawn and the contingent fee of Mr. Bangs' law firm, was to be distributed in the same percentages as the first $12,000 of the award.

Separately, and at their own individual expense, Ed H. Lacey and Angela E. McConville retained their brother, Charles Lacey, an attorney at law in Sioux Falls, South Dakota, to coordinate with the Bangs firm in the ultimate disposition of the condemnation suit. Attorney Lacey did not appear as an attorney of record in the condemnation action. The Bangs firm prepared and tried the condemnation action on behalf of the parties to the 1963 agreement and secured an award of some $74,500, which was reversed by this court in 1966. State Highway Commission v. American Memorial Parks, Inc., 82 S.D. 231, 144 N.W.2d 25. Thereafter, the case was ultimately settled and the award distributed in accordance with the agreement of August 1963. All correspondence from the Bangs firm relating to the interests of Ed H. Lacey and Angela E. McConville in the lawsuit and the settlement was conducted with and through Charles Lacey and remittance of the Lacey-McConville share in the settlement was made through attorney Lacey in November of 1966.

On or about June 28, 1969, Ed H. Lacey conveyed his undivided 30% interest in the contract for deed to plaintiff Barbara Schmidt. During the period from 1936 through 1969, Pine Lawn remitted payments to plaintiffs and their predecessors in interest under the provisions of the contract for deed as burial lots were sold, with plaintiffs and their predecessors in interest executing and delivering to Pine Lawn warranty deeds conveying title to the

burial lots. These payments were discontinued at Mr. Bangs' instructions in his capacity as president of and legal counsel for Pine Lawn, whereupon plaintiffs Schmidt and McConville brought suit against Pine Lawn and American Memorial in March of 1970 for a decree of specific performance and for a money judgment in the amount shown to be due plaintiffs by an accounting of the books and records of Pine Lawn.

American Memorial settled its interest in the lawsuit by deeding its interest in the contract for deed to Pine Lawn in exchange for a release. Pine Lawn filed an answer and a counterclaim alleging the invalidity of the 1936 contract for deed and claiming restitution of all amounts paid thereunder to plaintiffs and their predecessors in interest in excess of the actual cash investment made by W. G. Lacey. The amount claimed by way of restitution totals $12,474.61, of which $9,341.00 represents the amount remitted by Pine Lawn out of the gross sales price of cemetery lots and of which $3,133.61 represents the net proceeds of the condemnation award paid to W. G. Lacey's successors in interest. Plaintiffs filed a reply, the allegations of which are not material on this appeal.

On August 26, 1970 plaintiffs served a motion to disqualify the law firm of Bangs, McCullen, Butler, Foye & Simmons and particularly Geo. A. Bangs, a partner of said firm, from representing Pine Lawn and American Memorial in the specific performance litigation. This motion was supported by the affidavits of Angela McConville, Ed H. Lacey and Charles Lacey.

Although Mr. Bangs did not file an affidavit in opposition to the motion, there is in the record a copy of a letter from him to Mr. Gene R. Bushnell, plaintiff's attorney, dated May 27, 1970, which sets forth in detail the reasons why Mr. Bangs and his firm had decided after discussion not to accede to the request made in Mr. Bushnell's letter to Mr. Bangs (also a part of the record), dated May 22, 1970, asking that they withdraw from further representation of Pine Lawn in the specific performance action.

On June 21, 1971, the circuit court entered an order granting plaintiffs' motion to disqualify counsel. The order stated in part that:

"Geo. A. Bangs and Bangs, McCullen, Butler, Foye & Simmons (counsel) are directed to terminate their representation of Pine Lawn Memorial Park, Inc. and American Memorial Park, Inc. in this cause and to refrain from aiding, consulting or advising new counsel retained by Pine Lawn Memorial Park, Inc. and American Memorial Park, Inc. except to the limited extent reasonably necessary to the transfer of their duties to new counsel."

This intermediate appeal then followed.

At the outset it should be noted that all parties agree that no claim is made that Mr. Bangs received any confidential communications from Angela E. McConville or Ed H. Lacey in connection with the condemnation proceedings in 1963 or thereafter, and no claim is made that Mr. Bangs intends to disclose any confidential communication. Neither do plaintiffs question Mr. Bangs' good faith in his continued representation of Pine Lawn and American Memorial. Rather, plaintiff McConville takes the position that her former attorneys are in violation of a continuing fiduciary obligation to her, which fiduciary obligation arose to her benefit by reason of the fact that they represented her in connection with the condemnation proceeding and received for and remitted to her certain monies received in the action. She claims that by interposing a counterclaim which seeks judgment against her for the very same monies earlier obtained for her in the condemnation action, her former attorneys are attempting to inflict monetary injury on her in connection with a matter that is substantially related to the earlier representation.

Plaintiffs rely heavily upon the case of E. F. Hutton & Co. v. Brown, S.D.Tex. 1969, 305 F.Supp. 371. In that case attorneys from Houston and New York City law firms who had been retained by E. F. Hutton & Co. appeared with Brown, a corporate officer of E. F. Hutton & Co., at investigative hearings conducted by the Securities Exchange Commission, the Texas Securities Board and a Special Master in Bankruptcy concerning a certain loan that Brown had approved on behalf of E. F. Hutton & Co. to a borrower. Prior to the hearings the attorneys discussed the loan trans-

action with Brown and urged Brown to give responsive, truthful and candid answers to all questions. The record made at the hearings indicated that the circumstances were such that the investigators and Brown were led to believe that the New York and Houston lawyers were representing Brown personally.

Some time later the company terminated Brown's employment and commenced an action against him for alleged negligence and breach of fiduciary duty to the corporation. In this lawsuit the company was represented by the same Houston law firm, a partner of which had earlier appeared with Brown at the bankruptcy hearing. Although the New York firm did not enter a formal appearance in the action, the record revealed that it was participating in the investigation of the company's claim aganist Brown and in the subsequent lawsuit against him.

Shortly after suit was filed Brown's attorney requested that the Houston partner and his firm withdraw from further representation of E. F. Hutton & Co. in the litigation. Upon the refusal of the Houston partner to do so, Brown filed a motion to disqualify both the Houston firm and the New York firm from continuing to represent or to advise the company in connection with the litigation. In a well considered opinion, Judge Noel concluded that, "The rule against representing conflicting interests disqualifies an attorney from appearing adversely to his former client in litigation growing out of the subject matter of the prior representation." 305 F.Supp. at 397.

In the Hutton case, as here, the motion to disqualify was not based on a claimed violation of the duty to preserve the confidentiality of information. In discussing this aspect of the case, Judge Noel wrote:

> " * * * the basis for the rule against representing conflicting interests is broader than the basis for the attorney-client evidentiary privilege. The evidentiary privilege and the ethical duty not to disclose confidences both arise from the need to encourage clients to disclose all possibly pertinent information to their attorneys, and both protect only the confidential information disclosed.

The duty not to represent conflicting interests, on the other hand, is an outgrowth of the attorney-client relationship itself, which is confidential, or fiduciary, in a broader sense. Not only do clients at times disclose confidential information to their attorneys; they also repose confidence in them. The privilege is bottomed only on the first of these attributes, the conflicting-interests rule, on both." (footnotes omitted) 305 F.Supp. at 394.

In reaching the conclusion that the attorney for two formerly joint clients should be disqualified from appearing in litigation between them over a matter which was the subject of the former representation, Judge Noel was persuaded by two considerations suggested in earlier decisions:

"First, the ethical standards for attorneys must be formulated and construed in that way which will best protect the interests of clients and uphold the dignity of the legal profession. A strict construction of a lawyer's duties in cases like this one would give clients cause to feel they had been mistreated. If an attorney is permitted to defend a motion to disqualify by showing that he received no confidential information from his former client, the client, a layman who has reposed confidence and trust in his attorney, will feel that the attorney has escaped on a technicality. If courts protect only a client's disclosures to his attorney, and fail to safeguard the attorney-client relationship itself — a relationship which must be one of trust and reliance — they can only undermine the public's confidence in the legal system as a means for adjudicating disputes. The position urged by Hutton, if adopted, could only dilute the quality of justice.

"The second consideration which has persuaded this Court concerns the difficulties involved in determining whether confidential information has been disclosed to the former attorney. The responsibility for making necessary decisions cannot be shirked, but courts have a duty to avoid making needless distinctions. Upon careful

consideration, this Court has reached the conclusion that the receipt of confidential information is not a prerequisite to disqualification." (footnotes omitted) 305 F.Supp. at 395.

Although for reasons stated below we do not believe that the holding in the Hutton case is applicable in the instant case, we commend Judge Noel's opinion to all attorneys as a lucid discussion and concise historical review of the high standards of professional responsibility that must be maintained by all attorneys if the practice of law is to remain a learned, honorable profession.

In the case of American Can Co. v. Citrus Feed Co., 5 Cir., 436 F.2d 1125, the court discussed the application of Canons 6 and 37 of the American Bar Association's Canons of Ethics, which were still in effect at the time a motion to disqualify was made in the case. Citing the Hutton case and T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., S.D.N.Y., 113 F.Supp. 265, the court stated:

"To disqualify his former attorney, the former client need show no more than that the matters involved in the pending suit in which his former attorney represents his adversary are substantially related to the matters or cause of action in which the attorney previously represented him, the former client." 436 F.2d at 1128.

In an earlier case involving Canon 6 of the Canons of Ethics, the same court wrote:

"The Preamble to the Canons of Ethics admonishes the members of the bar that their conduct should be such as to merit the approval of all good men. That conduct should not be weighed with hairsplitting nicety. We have found no exceptions to the exhortation to 'abstain from all appearances of evil.' 1 Thessalonians 5:22." United States v. Trafficante, 5 Cir., 328 F.2d 117, 120.

In the case of Cord v. Smith, 9 Cir., 338 F.2d at 516, the court stated that:

"In our opinion, the rule that an attorney who has represented one party in a transaction may not thereafter represent the other party in an action against his former client, **arising out of or closely relating to the transaction,** does not depend for its operation upon a subsidiary decision as to whether the attorney would or might be using or misusing confidential information derived from his former client." 338 F.2d at 524. (Emphasis added.)

Preliminarily, we think that Pine Lawn is correct in its contention that no attorney-client relationship has ever existed between the Bangs firm and plaintiff Barbara Schmidt. Plaintiff Schmidt had no interest in the contract for deed until June of 1969, long after the condemnation proceedings had finally been resolved and the award distributed. She was not a party to the agreement of August 1963, and from all that appears in the record it does not appear that she has ever met Mr. Bangs or the members of his firm.

Plaintiffs argue that the matters in the instant case are substantially related to the subject matter in the condemnation case inasmuch as Mr. Bangs is now counterclaiming for the same monies which he earlier remitted by trust account check to plaintiff McConville and plaintiff Schmidt's predecessor in interest, Ed H. Lacey. This, say plaintiffs, constitutes an attempt by Mr. Bangs to inflict economic injury on his former client and perforce constitutes a violation of the role against representing conflicting interests.

Pine Lawn argues that the attorney-client relationship between the Bangs firm and plaintiff McConville was of a limited and peculiar nature. Plaintiff McConville was joined as a party defendant in the condemnation action because of her record ownership of an interest in the land condemned. Neither she nor Ed H. Lacey was called as a witness in the condemnation proceeding. No direct contact occurred between those two individuals and Mr. Bangs or the members of his firm other than the conference in Sioux Falls in August, 1963, which was devoted to

fixing the measure of attorneys' fees and the division of the net condemnation proceeds. All correspondence and contacts of the Bangs firm concerning the Lacey-McConville interests in the litigation were conveyed through Charles Lacey.

The 1936 contract for deed was introduced and received in evidence in the condemnation proceeding. The existence of that contract for deed was not regarded as material to the issues in the condemnation case. See State Highway Commission v. American Memorial Parks, supra, 144 N.W.2d at 34. No legal or factual issue was raised in the condemnation proceedings concerning the interpretation or the validity of the contract for deed. The only confidence reposed in and the only matter entrusted to the Bangs firm by Ed H. Lacey and Angela E. McConville in the condemnation proceedings was the determination of the value of some seven acres of land being condemned by the State of South Dakota for highway purposes.

Canon 4 of the Code of Professional Responsibility (adopted by the House of Delegates of the American Bar Association on August 12, 1969 to become effective on January 1, 1970; adopted by the State Bar of South Dakota on June 20, 1970, approved by the South Dakota Supreme Court on July 21, 1970, states that, "A Lawyer Should Preserve the Confidences and Secrets of a Client." As we have already stated, there is no claim in this case that Mr. Bangs acquired any confidential information from Angela E. McConville or Ed H. Lacey.

Canon 5 of the Code of Professional Responsibility provides that, "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client". As the explanatory notes and the disciplinary rules pertaining to Canon 5 emphasize, a lawyer should not accept or continue employment in cases involving multiple clients where the interests of such clients could prove to be other than identical. Nothing in the retainer agreement of August 13, 1963 could result in any divergence of interest among the several clients represented by the Bangs firm. The amount of the compensation and the division of the net proceeds were clearly and specifically set forth in the agreement, and without

question the agreement was meticulously and rigidly adhered to. It was only after the condemnation proceedings had been concluded that Mr. Bangs became apprehensive that the future of the cemetery corporation might be jeopardized by the payment of 25% of the net proceeds of sale of cemetery lots to the owners of the Lacey contract. His concern was sparked by that portion of Judge Biegelmeier's opinion for the court which stated:

"SDC 11.1910 (now SDCL 47-29-23) does require the proceeds of the sale of lots after deducting certain expenses to be exclusively applied and used in preserving, improving and care of the cemetery, graves and monuments and the expenses of the corporation, and they must not be used for any 'profit to the corporation or its members.' " 144 N.W.2d at 34.

It was because Mr. Bangs and the members of his firm became convinced that the original Lacey contract for deed was contrary to the public policy of the State of South Dakota and therefore invalid that they came to the conclusion that it was their duty to advise the corporation to cease to make any payments under the contract and to file an answer and counterclaim in the specific performance action asserting the invalidity of the contract and seeking recovery of all sums paid by the cemetery corporation under the contract in excess of the actual cash investment of W. G. Lacey. In the frame work of this factual background it is apparent that the basic issue in the present litigation between Barbara Schmidt and Angela E. McConville as plaintiffs and Pine Lawn as a defendant is purely an issue of law, namely, may private promoters enter into a valid and binding contract to convey property to a nonprofit cemetery corporation organized under the laws of South Dakota under terms and conditions which measure the purchase price of such land in terms of a fixed percentage of the price realized by the nonprofit cemetery corporation from the sale of cemetery lots? We agree with Pine Lawn that this legal issue has no material or substantial relationship to the issue tried in the condemnation proceedings, namely, the value of the seven acres of land being condemned by the State Highway Department. While the specific monies which were paid to plain-

tiff McConville under the agreement of August 13, 1963 may be material in an evidentiary sense to the disposition of the present litigation, they are in no sense the subject matter of the present litigation.

We have considered the cases cited by plaintiffs, including our own cases of Hosford v. Eno, 41 S.D. 65, 168 N.W. 764; In re Morrison, 43 S.D. 185, 178 N.W. 732; and State v. Basham, 84 S.D. 250, 170 N.W.2d 238, and while we do not in any manner detract from the general principles enunciated in those cases, we believe that because of factual differences the prior holdings are not dispositive of the issues raised herein. Likewise, the recent cases of Traylor v. City of Amarillo, N.D.Tex., 335 F.Supp. 423, and Yablonski v. United Mine Workers of America, D.C.Cir., 448 F.2d 1175, while generally instructive, do not deal with the specific issue on appeal here.

■ Our decision should in no way be construed as a relaxation of the strict standards of ethical responsibility embodied in the Code of Professional Responsibility, Canon 9 of which states that, "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." While we agree with the views expressed in United States v. Trafficante and Traylor v. City of Amarillo, supra, that in ruling upon matters of disqualification the conduct of attorneys should not be weighed with hairsplitting nicety and that attorneys should avoid the very appearance of evil, we are also in agreement with Judge Kaufman's opinion in the case of United States v. Standard Oil Company, S.D.N.Y., 136 F. Supp. 345, 367:

"When dealing with ethical principles, it is apparent that we cannot paint with broad strokes. The lines are fine and must be so marked. Guide-posts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent."

We think the following language from the case of Waters v. Western Company of North America, 10 Cir., 436 F.2d 1072, 1073, is applicable:

"Improper surface appearances are capable of damaging the judicial function and image as well as carrying a potential for actual injury to a party. However the discretion of the trial judge in such matters is very broad for appearances may be misleading and the overall proper administration of justice may well allow the trial judge to ignore appearance in favor of fact. What might appear as a conflict of interest on the surface can, in fact, be no conflict at all or so insignificant as to be overcome by other circumstances."

We think counsel for the parties in this case are to be commended for the forthright manner in which they communicated by letter their respective positions on the matter of disqualification prior to the filing of the motion to disqualify. The adversary system of law is not well understood by most laymen and it is important that attorneys explain to their clients the workings of the system. Where, as here, the client firmly believes that his former attorney may not properly handle subsequent litigation against him, it is of course proper for present counsel to express these feelings to the former attorney. Likewise, it is highly desirable that former counsel set forth clearly and candidly the reasons why he believes there is no professional impropriety in accepting the adverse representation, just as Mr. Bangs did here.

█ Because we believe that counsel for Pine Lawn has persuasively demonstrated that no real conflict of interests exists and that the subject matter of present representation on behalf of Pine Lawn is not substantially related to the subject matter of the prior representation and does not adversely affect any interest of plaintiff McConville with respect to which confidence was reposed by her in Mr. Bangs and the members of his firm, we conclude that the trial court erred in granting the motion to disqualify counsel.

Accordingly, the order is reversed.

HANSON, P. J., and BIEGELMEIER and WINANS, JJ., concur.

DOYLE, J., not having been a member of the court at the time of argument, took no part in this decision.