SCHMIDT et al., Appellants v.
PINE LAWN MEMORIAL PARK, INC., Respondent

(227 N.W. 2d 438)

(File No. 11441. Opinion filed March 26, 1975)

Charles Lacey, Sioux Falls, **Whiting & Freiberg,** Rapid City, for plaintiffs and appellants.

George A. Bangs of **Bangs, McCullen, Butler, Foye &** Simmons, Rapid City, for defendant and respondent.

DUNN, Chief Justice.

Barbara Schmidt and Angela E. McConville, successors in interest to W. G. Lacey, deceased, brought this action for a decree of specific performance and for a money judgment on a contract entered into by Pine Lawn Memorial Park, Inc., defendant, and W. G. Lacey in 1936 whereby Lacey agreed to convey land for cemetery lots in consideration of 50% (later reduced to 25%) of the sale price of each cemetery lot sold by Pine Lawn after the first 200 sales. After operating under this contract from 1936 through 1969, payments were discontinued by Pine Lawn and this action ensued wherein the plaintiffs seek specific performance and a money judgment in the amount shown to be due plaintiffs by an accounting of the books and records of Pine Lawn.

Pine Lawn filed an answer and counterclaim alleging the invalidity of the 1936 contract and asking that title to the cemetery property be conveyed to Pine Lawn and claiming restitution of all amounts already paid to plaintiffs or their predecessors in interest. On September 27, 1973, defendants moved for summary judgment on the basis of the affidavit of one Robert E. Powers, the prime promoter of Pine Lawn and also the owner, along with his wife, of American Memorial Parks, Inc.[1] This motion was noticed for hearing on October 23, 1973. No answering affidavit was filed by the plaintiffs; however, on November 14, 1973, plaintiffs moved to make the Attorney General of South Dakota a party, in view of the fact that Pine

---

1. American Memorial Parks, Inc., was made a defendant in this lawsuit because of an assignment of 40% of the Lacey contract to American Memorial Parks, Inc., on December 20, 1952. American Memorial Parks, Inc., is a wholly owned corporation of Powers. Powers and the Corporation were given immunity from suit by Pine Lawn prior to the Powers affidavit.

Lawn was a charitable public trust and that the Attorney General had the duty of representing the beneficiaries of any such trust. This motion was denied. On November 20, 1973, an order for summary judgment and judgment were entered as follows:

"1. By the entry of this decree, all right, title and interest of Greg Lacey, Ed H. Lacey,[2] Angela McConville and Barbara Schmidt in and to the real property described in the Complaint is hereby vested in Pine Lawn Memorial Park, Inc.

"2. The foregoing persons and all persons claiming by, through or under them, or any of them, are forever barred, enjoined and foreclosed from asserting any right, title or interest in or lien or encumbrance upon said lands adverse to the title of Pine Lawn Memorial Park, Inc. and its grantees.

"3. The defendant Pine Lawn Memorial Park, Inc. shall have and recover of the plaintiff Angela McConville the sum of $3,886.10."

On November 28, 1973, after the judgment had been signed but before it was filed, plaintiffs moved for additional time to respond to the motion for summary judgment, and this motion was denied. On December 3, 1973, the order and summary judgment were filed. On December 26, 1973, the plaintiffs moved to vacate the summary judgment on the basis of affidavits furnished by Charles Lacey, son of W. G. Lacey. After an answering affidavit by George Bangs, the motion to vacate summary judgment was denied on January 22, 1974. The appeal to this court is from the summary judgment and the order denying motion to vacate summary judgment. We reverse.

The summary judgment was granted in this case on the basis of SDCL 47-29-23, which reads as follows:

"The proceeds arising from the sale or resale by a cemetery corporation of lots, after deducting expenses of purchasing, inclosing, laying out, and improving the

2. Greg Lacey and Ed Lacey are not parties to this lawsuit so any judgment will not be binding as to them.

ground and of erecting buildings, shall be exclusively applied, appropriated, and used in protecting, preserving, improving, and embellishing the cemetery and its appurtenances; in the preservation, care, and marking of abandoned or neglected graves and in the repairing of monuments or gravestones thereon; and paying the necessary expenses of the corporation; and must not be appropriated to any purpose of profit to the corporation or its members."

[1] Two things should be noted about this statute. First of all, it provides that "the proceeds arising from the sale or resale by a cemetery corporation of lots, after deducting expenses of purchasing * * * shall be exclusively applied * * *." Thus, deductions can be made for purchasing the ground. The only way this land could be purchased according to the affidavit of Powers was on a contract, as there was no money to purchase land. Lacey furnished the land under this contract for which he was to be paid a percentage as each lot was sold. Such contracts are not illegal per se as the order of summary judgment might indicate, so long as the remaining mandates of the statute are carried out. Grove Hill Realty Co. v. Ferncliff Cemetery Ass'n, 1960, 7 N.Y.2d 403, 198 N.Y.S.2d 287, 165 N.E.2d 858, and Close v. Glenwood Cemetery, 107 U.S. 466, 2 S.Ct. 267, 27 L.Ed. 408.

Secondly, the last sentence of SDCL 47-29-23 states: "and must not be appropriated to any purpose of profit to the corporation or its members." SDCL 47-29-3 provides that: "The owner or owners or proprietors of a lot or lots in any cemetery, and none other, shall * * * be members of the cemetery corporation * * *."

Plaintiffs during oral argument stated that Lacey and his successors, as owners of the unplatted land from which further lots are to be sold, are members of the corporation. This is not substantiated in the record or by any statute. As Justice Biegelmeier stated in State Highway Commission v. American Memorial Parks, 82 S.D. 231, 144 N.W.2d 25, 34, "The other defendants (Lacey heirs) sold the land as unplatted land, not as burial sites." We would conclude that the contract on its face is not invalid under SDCL 47-29-23 without further factual background.

■ This leaves the question of whether Lacey was involved in a conspiracy as a silent partner of Powers to obtain proceeds for himself and for Powers or Powers' wholly owned corporation, American Memorial Parks. Under statutes requiring that proceeds from sales of burial lots be used exclusively for the payment of cemetery land and the upkeep and care of the cemetery, attempts by promoters, through the use of development or promotion corporations, to siphon off the income or funds of the cemetery association have met with judicial disapproval as constituting a fraud upon cemetery lot owners. Powers v. Johnson, 1957, Mo.App., 306 S.W.2d 616; George Washington Memorial Park Cemetery Ass'n v. Memorial Development Co., 1947, 139 N.J.Eq. 280, 51 A.2d 221, and 141 N.J.Eq. 47, 55 A.2d 675; Newell v. Cleveland Cemetery Ass'n, 1938, 61 Ohio App. 476, 22 N.E.2d 847; Snyder v. Ridge Hill Memorial Park, 1938, 61 Ohio App. 271, 22 N.E.2d 559.

There would appear to be a very real question of fact as to whether W. G. Lacey was a party to any conspiracy. Powers alleges in his affidavit that he and Lacey entered into this promotional scheme together and that, "The purpose of such contract obviously was that the promoters and developers of the cemetery should realize a profit from the sale of the cemetery lots."

Charles Lacey, who alleges he was present and participated in all discussions between his father and Powers as to Pine Lawn, states in his affidavit: (1) that W. G. Lacey had nothing to do with the planning, promotion or organization of Pine Lawn, (2) that W. G. Lacey made a $4,000 loan to Powers as he had done on many other occasions before on Powers' personal notes and that these personal notes were repaid by Powers and not by Pine Lawn, and (3) that W. G. Lacey agreed to put up the money for the land needed by the cemetery and to sell it to Pine Lawn on a percentage sales price contract, and that this was the extent of Lacey's dealings with Powers.

This complicated set of facts should not be the subject of summary judgment, particularly where the summary judgment is based entirely on the affidavit of an alleged co-conspirator who has been given immunity from suit by Pine Lawn previous to

making his statement. SDCL 15-6-56(c); Wilson v. Great Northern Railway Co. v. Christopherson, 1968, 83 S.D. 207, 157 N.W.2d 19.

The trial court had the benefit of the affidavits of Charles Lacey at the time of the ruling on a motion to vacate the summary judgment. These affidavits show a genuine issue of fact as to whether Lacey was a party to a conspiracy with Powers to siphon off funds from a cemetery association; thus, the summary judgment must be reversed and the case remanded for trial.

■ Upon the trial of this case, the Attorney General should be joined in order to protect the beneficiaries of the charitable trust. If Powers' affidavit is correct and there was a scheme to siphon off profits from Pine Lawn, this would be a fraud on the beneficiaries of the trust; the Pine Lawn management should not be permitted to give immunity at the expense of these beneficiaries. These people have no one to protect their interests unless the Attorney General is made a party to this lawsuit. See George Washington Memorial Park Cemetery Ass'n v. Memorial Development Co., 139 N.J.Eq. 280, 51 A.2d 221, and 141 N.J.Eq. 47, 55 A.2d 675.

Reversed and remanded for trial.

All the Justices concur.