[Civ. No. 52548. Second Dist., Div. Three. Feb. 23, 1978.]

EVELLE J. YOUNGER, as Attorney General, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
EDGAR LEE WARREN et al., Real Parties in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow, William R. Weisman, Edward T. Fogel, Jr., and Frederick R. Millar, Jr., Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, District Attorney, Harry B. Sondheim and Arnold T. Guminski, Deputy District Attorneys, for Real Parties in Interest.

## OPINION

**COBEY, Acting P. J.—** ██ ██ ██ The issue posed by this writ proceeding is whether respondent superior court abused its discretion on December 5, 1977 in recusing the District Attorney of Los Angeles County from prosecuting the case of People v. Edgar Lee Warren (L.A. Super. Ct. No. 309694) on the motion of both Warren and the district attorney, the real parties in interest herein.[1] Respondent court based its recusal order solely upon the facts that Warren is represented by the law firm of Atkins, Evans & Wagner, successor law firm to Cochran, Atkins & Evans,[2] and the said Cochran (Johnnie L., Jr.) had been appointed the Assistant District Attorney of Los Angeles County, effective January 3, 1978. The just-mentioned successor law firm is presently defending somewhere between 75 and 200 or more felony cases in respondent court and if this order is upheld the Attorney General, petitioner herein, will, pursuant to Government Code sections 12550 and 12553, be forced either to prosecute a substantial number of these cases himself or to employ special counsel to do so at state expense.

This is not a case of the personal disqualification of an individual prosecutor because of the existence of a prior attorney-client relationship between him or those in his former law firm and the accused. (See Annot., Disqualification of Prosecuting Attorney on Account of Relationship with Accused (1970) 31 A.L.R.3d 953, 957.) This is instead a case of the disqualification of an entire prosecutorial office from the prosecution of cases where such a relationship formerly obtained because of the fact that the former defense attorney involved has become one of the three top executives in the prosecutorial office.

### A. The Role and Responsibilities of the Assistant District Attorney of Los Angeles County

---

[1] The People may not appeal from the challenged order. (See Pen. Code, § 1238.) Whether the trial court abused its discretion in making it therefore may be reviewed herein. (See *People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255, 269 [137 Cal.Rptr. 476, 561 P.2d 1164].)

What is involved here is apparently not a possible excess in the trial court's exercise of its jurisdiction. Judicial disqualification of a prosecutor is not an infringement upon executive power in violation of article III, section 3, of the California Constitution. That Constitution does not deny to a trial court the authority to disqualify a prosecutor "when his participation would taint the proceeding." (*Id.* at pp. 262, 265.)

[2] This latter law firm dissolved on December 31, 1977. Cochran himself once represented Warren in the underlying case.

The Assistant District Attorney of Los Angeles County is the number three person in an office having more than 550 deputies. He is outranked therein only by the chief deputy district attorney and by the district attorney, either of whom he may be called upon to replace temporarily.[3] The primary duties of the office include: (a) policymaking and supervisory jurisdiction over all cases processed by the office of the district attorney involving prosecutions in juvenile court, and all cases processed by the consumer and environmental protection division; (b) acting as liaison between the district attorney and the Board of Supervisors of Los Angeles County; (c) recruitment and employment of attorneys in the district attorney's office, and membership on the appraisal of promotability committee and participation thereby in the promotion process with respect to all deputy district attorneys; (d) direct supervision over the special investigations division, which is charged with the investigation and prosecution of misconduct of elected or appointed officials and with misconduct of law enforcement personnel, including but not limited to homicides committed by law enforcement officers; (e) participation in weekly meetings of the executive staff of the office.

## B.   *The Applicable California Law*[4]

In *People* v. *Rhodes* (1974) 12 Cal.3d 180, 183 [115 Cal.Rptr. 235, 524 P.2d 363], our Supreme Court took the view that "vital interests of criminal defendants and the criminal justice system are adversely

---

[3]According to the return of the district attorney, "[t]he Chief Deputy District Attorney is frequently called upon to make decisions concerning the processing and disposition of criminal prosecutions other than those under the supervision of the Assistant District Attorney. The Chief Deputy District Attorney is specifically charged with the responsibility for determining whether a criminal prosecution involving the possibility of the death penalty is one in which it is appropriate to seek that penalty, and is also charged with the responsibility of determining whether a departure from the promulgated Felony Case Settlement Policy of the Office is to be undertaken with respect to most categories of major prosecutions. The Chief Deputy District Attorney is also specifically charged with the determination of whether a witness is to be granted immunity in capital or other major cases." (Fn. omitted.)

Under a general office memorandum, dated February 1, 1978, of the district attorney, Cochran may not succeed to the duties of either higher office with respect to the prosecution of any case in which either he or his former law firm represented a defendant. Instead the director of special operations of the office shall so succeed.

[4]We have found little out-of-state law applicable to the kind of situation before us. The two leading cases appear to be *Fox* v. *Shapiro* (1973) 84 Misc.2d 223 [375 N.Y.S.2d 945] and *State* v. *Chambers* (1974) 86 N.M. 383 [524 P.2d 999]. They reach opposite results. The *Chambers* case expressly follows *State* v. *Latigue* (1972) 108 Ariz. 521 [502 P.2d 1340], where the court rested its decision in part on the supervisory role occupied by the involved prosecutor and the talk about cases in the office. (*Id.* at pp. 1341-1342.)

affected when public prosecutors are permitted to defend or assist in the defense of persons accused of crime." The court said: "It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities but also that such officials avoid, as much as is possible, the *appearance* of impropriety." (Fn. omitted.) (*Id.* at p. 185.)

In the aforementioned *People* v. *Superior Court (Greer), supra,* 19 Cal.3d at page 270, our Supreme Court upheld a recusal order directed against a district attorney prosecuting a homicide, where the victim was the son of a member of the district attorney's staff, because under these circumstances "the prosecutor might at least appear to have an emotional stake in the case of the sort which could disturb his exercise of impartial judgment in pretrial and trial proceedings." The court pointed out that: "The prosecutor is a public official vested with considerable discretionary power to decide what crimes are to be charged and how they are to be prosecuted." (*Id.* at p. 266.) According to the court, because of this broad discretion, "the public he serves and those he accuses may justifiably demand that he perform his functions with the highest degree of integrity and impartiality, and with the *appearance* thereof." (Italics added; fn. omitted.) (*Id.* at pp. 266-267.)

## C.   *The Question Presented and Answered*

■   The question presented is whether Cochran's assumption of the office of Assistant District Attorney of Los Angeles County creates such an *appearance* of possible impropriety, either to the public or to criminal defendants generally, that it was reasonable for the trial court to recuse the district attorney and his entire office from prosecuting any of the felony cases where either Cochran or his former law firm at one time represented the defendant or defendants therein.

We hold that the challenged recusal order before us does not constitute an abuse of discretion by the trial court. The district attorney is to be commended for the steps he has already taken to insure that

Cochran has no contacts with the prosecution of any of his clients or those of his former law firm. The fact remains, though, that in two areas at least the presence of Cochran near the top of the district attorney's office could possibly affect the prosecution of those cases by the district attorney.

We refer first to Cochran's attendance at the weekly meetings of the executive staff of the office consisting of some 23 persons who have major responsibilities within the office. Even though Cochran is excluded from any discussion at these or other meetings involving any case against his clients or those of his former law firm, as the district attorney has promised, he could still quite innocently recommend or otherwise participate in the formulation of prosecutorial policies at such meetings which could ultimately affect, perhaps substantially, the prosecution of those cases. In so acting, he might completely forget the possibility of such an impact; yet the impact could occur. Secondly, his membership on the "Appraisal of Promotability Committee" means, as the district attorney has conceded in his return, that Cochran could become aware of a candidate's connection with one or more of the former cases of Cochran or of his former law firm and the candidate's actions concerning such a case might well be discussed in any evaluation report or other document submitted by the candidate for the committee's consideration. A deputy handling one or more of such cases would not in all probability forget Cochran's former professional association with their defense.

In any event the district attorney's office would always be "on the spot" in the public's mind as regards its handling of any of the Cochran cases. The problem is a "Caesar's wife" problem. Not only must evil itself be avoided but any significant appearance thereof must likewise be avoided. The presence of a former leading criminal defense attorney, near the top of a public prosecutor's office, suggests to those of a paranoid and conspiratorial turn of mind the presence of a fox in the hen house. We do not think that such abnormal suspicion has any reasonable basis in fact whatsoever, but since a public prosecutor must "perform his functions with the highest degree of integrity and impartiality, and with the appearance thereof" (*People* v. *Superior Court (Greer), supra,* 19 Cal.3d at pp. 266-267), for appearance's sake, the basis for this suspicion must be eliminated.

## Disposition

The alternative writ of mandate heretofore issued is discharged. Our temporary stay order herein is vacated. The peremptory writ of mandate is denied.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied March 21, 1978, and the opinion was modified to read as printed above. Petitioner's application for a hearing by the Supreme Court was denied April 20, 1978.