Barbara Susanne SCHMIDT and Angela E. McConville, Plaintiffs and Appellants,

v.

PINE LAWN MEMORIAL PARK, INC., and American Memorial Parks, Inc., Defendants and Respondents

and

Mark V. Meierhenry (successor in office to William J. Janklow), Attorney General of South Dakota, representing the members of Pine Lawn Memorial Park, Inc., a Charitable Trust, Third-Party Respondent.

No. 12333.

Supreme Court of South Dakota.

Argued Oct. 13, 1978.

Decided April 19, 1979.

Patrick H. Lacey, Sioux Falls, for plaintiffs and appellants; Louis K. Freiberg, Rapid City, Harlan A. Schmidt, Spearfish, on brief.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and respondent Pine Lawn Memorial Park, Inc.

R. C. Riter of Riter, Mayer, Hofer & Riter, Pierre, for defendant and respondent American Memorial Park, Inc.

Donald D. Foreman, Asst. Atty. Gen., Pierre, for third-party respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

DUNN, Justice (on reassignment).

This case involves an action for specific performance of a contract for the sale of real property. Plaintiffs Schmidt and McConville appeal from a judgment denying specific performance on the contract, vesting title to the real property in Pine Lawn Memorial Park, Inc. (Pine Lawn), and awarding a money judgment against plaintiff McConville. We affirm in part and reverse in part.

Plaintiffs are successors in interest to W. G. Lacey (Lacey), deceased, who entered into a 1936 contract for deed with Pine Lawn, a nonprofit cemetery corporation, whereby Lacey agreed to convey land for cemetery lots in consideration of fifty percent (later reduced to twenty-five percent) of the sale price of each cemetery lot sold by Pine Lawn after the first two hundred

sales. The land which was the subject of the contract for deed was located by Robert E. Powers (Powers), a cemetery promoter and operator. Powers arranged for the purchase of the necessary land for $750, Lacey furnished the money for the purchase, and title was taken in Lacey's name. In order to get Pine Lawn started in Rapid City, South Dakota, Powers also borrowed several thousand dollars from Lacey and signed personal promissory notes bearing no interest and secured by burial lots in a cemetery owned by Powers. Lacey and Powers agreed that after return of Lacey's capital and satisfaction of the notes, the proceeds under the contract for deed would go sixty percent to Lacey and forty percent to Powers. On December 20, 1952, after repayment of the notes signed by Powers for the money advanced by Lacey, Ed H. Lacey[1] and McConville, Lacey's successors in interest to the contract for deed, conveyed a forty percent interest in the contract to American Memorial Parks, Inc. (American), a wholly owned corporation of Powers. The trial court found that Pine Lawn had paid a total of $15,568.50 pursuant to the contract through 1966, which was distributed as follows:[2]

| to American | 40% | $ 6,227.40 |
| to Ed H. Lacey | 30% | $ 4,670.55 |
| to Angela McConville | 30% | $ 4,670.55. |

In the late 1960s, the payments on the contract for deed were discontinued at the insistence of Pine Lawn's counsel. This action followed in which plaintiffs seek specific performance and a money judgment in the amount shown to be due plaintiffs by an accounting of the books and records of Pine Lawn.[3]

Pine Lawn filed an answer and counterclaim alleging the invalidity of the 1936

---

1. In June of 1969, Ed H. Lacey conveyed his thirty percent interest in the contract for deed to plaintiff Schmidt.

2. In 1963, the State Highway Commission condemned part of the cemetery land for highway purposes. In accordance with a written agreement, Ed H. Lacey and McConville received fifteen percent of the net award after payment of attorney fees and costs, amounting to $3,133.61. See *State Highway Commission v.*

*American Memorial Parks, Inc.,* 1966, 82 S.D. 231, 144 N.W.2d 25 (we reversed the original condemnation award and the case was ultimately settled).

3. American would not agree to be a party plaintiff with the other owners of interest in the contract for deed, so plaintiffs joined American as a defendant pursuant to SDCL 15–6–19(a).

contract and asking that title to the cemetery property be conveyed to Pine Lawn and claiming restitution of all amounts already paid to plaintiffs or their predecessors in interest in excess of the actual cash investment made by Lacey. The counterclaim was only against plaintiffs because Pine Lawn had already agreed that if American would convey its forty percent interest in the contract for deed, Pine Lawn would not assert any claim against American for monies paid to it. A quit claim deed was executed, and Pine Lawn released American from any other liability arising out of the transaction.[4]

The trial court granted Pine Lawn's motion for summary judgment on November 20, 1973. Judgment was entered vesting title to the cemetery land, the subject of the contract for deed, in Pine Lawn and granting a money judgment in restitution against plaintiff McConville. On appeal, we reversed the judgment and remanded the case for trial on the question whether Lacey was a party to a conspiracy with Powers to siphon off funds from a cemetery association. We further instructed that the Attorney General be joined in order to protect the interests of the beneficiaries of the charitable trust. *Schmidt v. Pine Lawn Memorial Park, Inc.,* 1975, 88 S.D. 665, 227 N.W.2d 438.

At trial before the court, an Assistant Attorney General stated that an investigation had been conducted into the matter which resulted in the conclusion that the settlement between American and Pine Lawn was a legitimate and appropriate settlement which did not involve any breach of trust or of a fiduciary duty to the beneficiaries of the charitable trust by the management of Pine Lawn. The trial court agreed with the conclusion of the Attorney General, and we are satisfied that the interests of the beneficiaries of the charitable trust were protected. The trial court found that the 1936 contract for deed embodied a scheme or plan on the part of Powers and Lacey to derive private profit by siphoning funds from the operations of a nonprofit cemetery corporation. Accordingly, on August 15, 1977, the trial court entered judgment denying plaintiffs' request for specific performance on the contract, vesting title to the real property in Pine Lawn, and awarding a money judgment against plaintiff McConville.

Statutes governing cemetery corporations in South Dakota dictate the distribution of proceeds from the sale of cemetery lots as follows:

"The proceeds arising from the sale or resale by a cemetery corporation of lots, after deducting expenses of purchasing, inclosing, laying out, and improving the ground and of erecting buildings, shall be exclusively applied, appropriated, and used in protecting, preserving, improving, and embellishing the cemetery and its appurtenances; in the preservation, care, and marking of abandoned or neglected graves and in the repairing of monuments or gravestones thereon; and paying the necessary expenses of the corporation; and must not be appropriated to any purpose of profit to the corporation or its members." SDCL 47–29–23.

As we have discussed previously, under such statutes controlling the use of proceeds from sales of burial lots, "attempts by promoters, through the use of development or promotion corporations, to siphon off the income or funds of the cemetery association have met with judicial disapproval as constituting a fraud upon cemetery lot owners." *Schmidt v. Pine Lawn Memorial Park, Inc.,* supra, 227 N.W.2d at 440.

Upon remand on the question of Lacey's involvement in a conspiracy with Powers to siphon off funds from Pine Lawn, the trial court found from the meager facts before it

4. Plaintiffs moved to disqualify Pine Lawn's counsel from representing Pine Lawn and American in the specific performance litigation because of his involvement in the previous condemnation proceedings on behalf of plaintiffs and their predecessors in interest. The trial court granted the motion to disqualify and an intermediate appeal followed. We reversed the order of the trial court in *Schmidt v. Pine Lawn Memorial Park, Inc.,* 1972, 86 S.D. 501, 198 N.W.2d 496.

that from the time the land was purchased in 1936, Lacey and Powers anticipated the receipt of personal profits from the contract for deed. Lacey's son and Powers testified that Lacey and Powers discussed Lacey's conveyance of the forty percent interest in the contract for deed to Powers as consideration for Powers' procurement of the land which Lacey sold to Pine Lawn. The assignment of the forty percent interest was ultimately carried out after Powers paid off his personal notes to Lacey by a conveyance to Powers' corporation, American. This conveyance was completed by Lacey's successors in interest without a signed agreement which the trial court found to be evidence of an ongoing scheme to obtain profits from Pine Lawn, a supposedly nonprofit cemetery corporation. Powers even testified that he and Lacey anticipated profits of three or four hundred thousand dollars on the sale of lots from Pine Lawn. The trial court found that the prospect of these profits was crucial to the business dealings between Lacey and Powers. There is evidence in the record which supports the finding that Lacey was a party to a conspiracy with Powers to siphon off funds from Pine Lawn, and we will not disturb the trial court's findings. SDCL 15–6–52(a).

We do not wish to intimate that Lacey knowingly entered into this illegal conspiracy. Powers was experienced in dealing with nonprofit cemetery associations and the limitations placed thereupon by statute. In spite of this, he was the promoter and moving force in this conspiracy to siphon off profits from a nonprofit association, while Lacey's role was confined to furnishing the capital for the illegal operation, even though the evidence does reveal that he, too, expected a profit based upon assurances made to him by Powers. The record is barren, however, of any evidence that Lacey ever realized that he was entering into an illegal contract.

■ In the final analysis, however, the consideration for the 1936 contract for deed was a share of the profits of a nonprofit corporation. This is in contravention of the policy expressed in SDCL 47–29–23 and works a fraud on the beneficiaries of the charitable trust by siphoning off funds which would otherwise go into a perpetual care fund. We hold that this contract for deed is void and unenforceable because it constitutes an attempt by the promoters to convey property to a nonprofit cemetery corporation organized under the laws of South Dakota under terms and conditions which measure the purchase price of such land in terms of a fixed percentage of the price realized by the nonprofit cemetery corporation from the sale of cemetery lots. Therefore, we affirm the portion of the judgment which denies specific performance of the contract and vests title to the property in Pine Lawn.

■ We must, however, reverse that portion of the judgment which awards a money judgment in restitution against McConville. We do this in light of the conclusion that the settlement between American and Pine Lawn which excluded any restitution was proper and did not involve a breach of trust or fiduciary duty to the beneficiaries of the charitable trust by the management of Pine Lawn. Further, in oral argument, counsel for Pine Lawn, in response to questions from the bench, renewed his pre-judgment offers and agreed that if plaintiffs would deliver quit claim deeds conveying their interests in the 1936 contract for deed to Pine Lawn, Pine Lawn would forgive the money judgment it has against plaintiffs. We conclude that equity dictates such a resolution to this problem which has been litigated for a decade.

The portion of the trial court judgment denying plaintiffs' prayer for relief and vesting title to the cemetery property in Pine Lawn is affirmed, and the portion of the judgment awarding a money judgment against plaintiff McConville is reversed.

WOLLMAN, C. J., and MORGAN, J., concur.

HENDERSON and FOSHEIM, JJ., concur specially.

HENDERSON, Justice (concurring specially).

I do not wish, in any way, to express my approval of language that can be interpreted to mean that there was fraud, fraudulent intent to siphon money, a scheme to siphon, or a conspiracy of fraudulent intent on the part of Lacey. Times were hard in 1936. To have put up money for a cemetery in the "dirty 30's" for an eventual beautiful cemetery on the edge of our Black Hills was an act of good will, albeit for a profit.

I would simply hold that the 1936 contract for deed is void and unenforceable for its nature and intent was to make profit, an ordinarily admirable purpose, but in dealing with a charitable corporation such as a cemetery, it is forbidden. SDCL 47-29-23. Profits in charitable corporations are contrary to public policy and the purpose of their creation. Plaintiffs, therefore, as successors in interest are not entitled to the extraordinary judicial remedy of specific performance of a contract that is void. Title should be vested in Pine Lawn. The trial court should be affirmed in this regard.

It would reasonably follow that upon plaintiff's compliance the $7,105.41 money judgment award against McConville would be reversed, based upon Pine Lawn's representations to the Supreme Court that it would forgive the money judgment.

I am authorized to state that FOSHEIM, J., joins in this special concurrence.