Johnny Wayne Terry was convicted of the unlawful possession and sale of methaqualone, fined $25,000 and sentenced to five years in the penitentiary.
The State's evidence established that on May 16, 1980, the appellant sold five Quaalude tablets to Mrs. Cathy Moore, an undercover agent with the West Alabama Narcotics Squad.
According to Mrs. Moore's testimony, the sale took place at "The Cowboy" lounge in Tuscaloosa, Alabama, on this date.
The appellant took the stand and denied the sale of drugs to Mrs. Moore. In rebuttal, the State re-called Mrs. Moore, who testified, over defense objections, to another drug transaction between the appellant and herself. The second occurrence involved the sale of cocaine and occurred on May 19, 1980, three days following the incident in question here.
Mrs. Moore stated that on May 19, she met the appellant at "The Cowboy," and by prearrangement she went to the appellant's car, removed a small plastic bag containing a white powder from the glove compartment, and left a $100 bill. The following day, she had a telephone conversation with the appellant to confirm that he "got the $100 . . . for the Cocaine." (R. 66). Mrs. Moore testified that she tape recorded the conversation. Then, following an in camera playing of the tape and determination of its admissibility, the recording was played for the jury.
After his trial and conviction, the appellant filed a motion alleging that he was entitled to a new trial because the assistant district attorney who prosecuted the case against him had been previously associated with the law firm which secured the appellant's release from jail on the instant offense. Different counsel represented appellant on trial. After a hearing, the trial court denied the motion for new trial and this appeal followed.
 I
Appellant contends that the trial court erroneously admitted evidence of his alleged sale of cocaine to Mrs. Moore, an offense not charged in the indictment.
Although it is generally true that an accused must be tried only on the charge contained in the indictment, Mason v. State,259 Ala. 438, 66 So.2d 557 (1953), there are, of course, numerous exceptions to the rule excluding non-charged offenses,See Lucy v. State, 340 So.2d 840 (Ala.Cr.App.), cert. denied,340 So.2d 847 (Ala. 1976); C. Gamble, McElroy's AlabamaEvidence § 69.01 (3d ed. 1977). If the evidence has a probative function other than to show the defendant's bad character or inclination to commit the type of crime for which he is being prosecuted, it is admissible. See Allen v. State, 380 So.2d 313
(Ala.Cr.App.), cert. denied, 380 So.2d 341 (Ala. 1980).
In our judgment, the evidence of appellant's sale of cocaine three days after the charged offense was admissible to show his plan, design, scheme or on-going business system to engage in an illegal drug transaction. C. Gamble, supra, at § 69.01 (6). Both the charged offense and the other crime involved the same buyer (Mrs. Moore) and the same location ("The Cowboy" lounge) and were inferentially, therefore, part of an overall plan having common features. See McDonald v. State, 57 Ala. App. 529,329 So.2d 583 (1975), cert. quashed, 295 Ala. 410,329 So.2d 596, cert. denied, 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99
(1976).
In addition, the evidence was admissible because appellant's affirmation that he "never sold [Mrs. Moore] any kind of drugs, period" (R. 46) opened the door for the State to refute this claim by showing the subsequent cocaine sale on rebuttal. SeeFisher v. State, 57 Ala. App. 310, 328 So.2d 311, cert. denied,295 Ala. 401, 328 So.2d 321 (1976); C. Gamble, supra, at § 69.01 (9).
 II
Appellant next argues that he should have been granted a new trial because the *Page 712 
assistant district attorney who prosecuted him had formerly been associated with a law firm whose other members represented him and to whose two partners he divulged confidential information.
The facts adduced at the hearing on the motion for new trial established, and the trial court's order found, that at the time appellant was arrested for the instant offense on September 20, 1980, Mr. Tommy Smith, the assistant district attorney who tried the case against appellant, was associated with the Tuscaloosa law firm of Crownover and Mountain. Appellant spoke with Mr. Crownover and Mr. Mountain at the Tuscaloosa County Jail on September 20, 1980, and employed them to secure his release on bond.
Thereafter, on September 22, 1980, appellant went to the offices of Crownover and Mountain and conferred at length with Mr. Crownover. Appellant testified that he divulged to Mr. Crownover all the pertinent facts concerning his involvement in the offense for which he had been arrested, and he stated that Mr. Crownover took notes. Crownover then quoted appellant a fee for representing him further, but appellant left without retaining Mr. Crownover. Appellant later employed other counsel, who represented him at trial.
Appellant testified that Mr. Tommy Smith was not present during either conference, and he did not know, prior to trial, that Smith had been associated with the firm.
Mr. Tommy Smith testified that in March of 1981, he left the firm of Crownover and Mountain and assumed the position of assistant district attorney for Tuscaloosa County. On August 31, 1981, the afternoon before appellant's trial, Smith was assigned to prosecute the case. All pre-trial dealings in appellant's case had been handled by another assistant district attorney, Mr. Summerford.
Smith stated that he had neither talked with appellant about the case nor discussed the matter with Mr. Crownover or Mr. Mountain. In fact, he had no idea, prior to the motion for new trial being filed, that appellant had previously conferred with either of his former law partners.
It is undisputed, therefore, that Smith had no actualknowledge of the facts of appellant's case derived from his former association with the law firm of Crownover and Mountain. Thus, this case can be distinguished from Satterwhite v. State,359 So.2d 816 (Ala.Cr.App.), remanded, 359 So.2d 819 (Ala.), onremand, 359 So.2d 821 (Ala.Cr.App. 1977), cert. quashed,359 So.2d 821 (Ala. 1978), and Hannon v. State, 48 Ala. App. 613,266 So.2d 825 (1972), both of which dealt with a prosecutor who had, in his former capacity as a defense lawyer, actually received confidential communications from an individual who was later prosecuted by the State.
In Satterwhite, the accused consulted a lawyer in private practice to defend him on pending drug charges. The lawyer discussed the case with him and quoted him a fee, but was not retained by the defendant. Subsequently, the lawyer became an assistant district attorney and prosecuted the defendant for the same drug offense. This court reversed the conviction, holding that the prosecutor should have been disqualified from trying the case against his former client.
In Hannon, the defendant conferred with a public defender who was later elected District Attorney. The District Attorney, however, did not take part in prosecuting his former client and did not give his assistants any information derived from conversations with the defendant. We affirmed this conviction, finding no breach of the attorney-client relationship.
Since Smith received no confidential information from the appellant in the instant case, it is clear that there was noactual breach of the attorney-client relationship. Appellant contends, however, that the knowledge of the case gained by Smith's former law partners should have been imputed to the prosecutor, and should have vicariously disqualified Smith from prosecuting the appellant. *Page 713 
The basis for vicarious disqualification is found in Canon 5 of the Code of Professional Responsibility of the Alabama State Bar, specifically in DR 5-105 (D):
 "If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment."
Further, the following statement appears in the "Definitions" section of the Alabama Code of Professional Responsibility:
 "(7) Unless the context otherwise requires, whenever in these rules the conduct of a lawyer is prohibited, all lawyers associated with him are also prohibited."
Thus, it can be seen that the basis for imputing the knowledge of one law partner to his associate is found in Definition (7) and in DR 5-105 (D), which requires vicarious disqualification with respect to any disciplinary rule, including Canon 4 ("A lawyer should preserve the confidences and secrets of a client"), see Annotated Code of ProfessionalResponsibility 246 (American Bar Foundation 1979) [hereinafter cited as "Annotated Code"]. See also Sellers v. State,56 Ala. App. 367, 321 So.2d 706 (1975). Whether DR 5-105 (D) or Definition (7) applies to a former associate of a firm who has no actual knowledge of the case is not clear. See AnnotatedCode at 246-51, 407-11. See generally Annot., 31 A.L.R.3d 953 (1970).
On the one hand, the plain meaning of the terms "associate" in DR 5-105 (D) and "associated with" in Definition (7) describes "those who are [currently] lawyer employees of the firm." ABA Committee on Ethics and Professional Responsibility, Formal Op. 330 (1972). Thus, at least two courts, in dictum, have concluded that there is no per se conflict of interest for a prosecuting attorney previously employed by a firm representing the defendant; as long as the prosecutor was not personally privy to any confidential information arising from his former employment, disqualification is not mandated. SeeUnited States v. Hubbard, 493 F. Supp. 206 (D.D.C. 1979);McCormick v. Meyer, 108 Misc.2d 44, 437 N.Y.S.2d 42 (Supreme Court, Orange Co. 1981).
On the other hand, some jurisdictions have applied DR 5-105 (D) in conjunction with Canon 9 ("A lawyer should avoid even the appearance of professional impropriety") to bar the participation of former defense lawyers-turned-prosecutors in cases involving clients of their previous firms, irrespective of the lack of personal knowledge on the part of the prosecutors. See Younger v. Superior Court, 144 Cal.Rptr. 34,77 Cal.App.3d 892 (1978). See also, Chadwick v. Superior Court,164 Cal.Rptr. 864, 106 Cal.App.3d 108 (Ct.App. 1980); State v.Boyd, 560 S.W.2d 296 (Mo.Ct.App. 1978); State v. Cooper,63 Ohio Misc. 1, 409 N.E.2d 1070 (Ct.Comm.Pleas 1980).
In Younger v. Superior Court, the third-ranking attorney in the Los Angeles County District Attorney's office, one Cochran, had formerly been a member of a prominent criminal defense firm. Characterizing the situation as a "Caesar's wife problem," 77 Cal.App.3d at 897, the California Court of Appeals determined that there may have been:
 "such an appearance of possible impropriety either to the public or to criminal defendants generally, that it was reasonable for the trial court to recuse the district attorney and his entire office from prosecuting any of the felony cases where either Cochran or his former law firm at one time represented the defendants therein."
Id. 77 Cal.App.3d at 896, 144 Cal.Rptr. 34. The court emphasized Cochran's executive position in the district attorney's office, noting that he was the "number three man" on a staff of 550, and observing that he had substantial responsibility for prosecutorial policy and staff promotions. These factors, according to the court, necessitated a more exacting review of what might trigger the appearance of impropriety in the public mind.
Chadwick, Boyd and Cooper all dealt with former public defenders who became district attorneys. The courts in all three cases determined, in contrast to our decision in Hannon, that the prosecutors were disqualified, *Page 714 
notwithstanding their voluntary isolation from cases with which they were familiar, or their lack of knowledge of other cases, from prosecuting any individuals who had previously been represented by the public defender's office. Thus, the courts in Chadwick, Boyd, and Cooper, while convinced that no actual wrongdoing had occurred, held that disqualification was required on the basis of appearances alone. They, in effect, read into DR 5-105 (D) the maxim of Canon 9.
This approach, of grafting Canon 9 principles onto DR 5-105 (D), has been criticized as unduly restrictive and out-of-touch with the realities of large modern law firms whose members are, more often than not, unaware of the confidential information imparted to other members of the firm. See Note, 44 Fordham L.Rev. 130 (1975). Following this reasoning, several courts have declined to apply DR 5-105 (D) on the basis of appearances alone when the facts of the case indicated that the individual attorney did not have access to confidential information. See,e.g. Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,518 F.2d 751 (2d Cir. 1975).
In Silver Chrysler, the Court of Appeals for the Second Circuit held that the dissemination of confidential information among members of a large law firm was a rebuttable-rather than an irrebuttable-presumption. Accord, Gas-A-Tron of Arizona v.Union Oil Co., 534 F.2d 1322 (9th Cir.), cert. denied,429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); Schmidt v. Pine LawnMemorial Park, Inc., 86 S.D. 501, 198 N.W.2d 496 (1972).
In our judgment, the approach taken in Silver Chrysler and inHannon, to make a factual determination whether there has been an actual breach of the attorney-client relationship, i.e., to apply Canon 4 (Confidences and Secrets) and Canon 5 (Conflicts of Interest) independently of Canon 9, is the more sound position. Compare Jacobs v. State, 343 So.2d 1243 (Ala.Cr.App. 1977) and Payne v. State, 48 Ala. App. 401, 265 So.2d 185, cert. denied, 288 Ala. 748, 265 So.2d 192, cert. denied,409 U.S. 1079, 93 S.Ct. 703, 34 L.Ed.2d 669 (1972) (Judges of the Court of Criminal Appeals, formerly Assistant Attorneys-General, were not barred from deciding criminal cases unless, by virtue of their former employment, they possessed actual disqualifying knowledge).
We do not wish to be understood as retreating from the high standards of ethical conduct embodied in Canon 9 of the Alabama Code of Professional Responsibility. While we reaffirm the principle that attorneys should avoid even the appearance of impropriety, we agree with the South Dakota Supreme Court, that:
 "[w]hen dealing with ethical principles it is apparent that we cannot paint with broad strokes. The lines are fine and must be so marked. Guide-posts can be established when virgin ground is being explored, and the conclusion in a particular case can be reached only after painstaking analysis of the facts and precise application of precedent."
Schmidt v. Pine Lawn Memorial Park, Inc., 198 N.W.2d at 502 (Quoting United States v. Standard Oil Co., 136 F. Supp. 345,367 (S.D.N.Y. 1955)).
 "Improper surface appearances are capable of damaging the judicial function and image as well as carrying a potential for actual injury to a party. However, the discretion of the trial judge in such matters is very broad for appearances may be misleading and the overall proper administration of justice may well allow the trial judge to ignore appearance in favor of fact. What might appear as a conflict of interest on the surface can, in fact, be no conflict at all or so insignificant as to be overcome by other circumstances."
Schmidt, supra, 198 N.W.2d at 502, quoting Waters v. WesternCo. of North America, 436 F.2d 1072, 1073 (10th Cir. 1971).
We also note that, in a recent opinion of the General Counsel of the Alabama State Bar, it was determined that "[w]here spouses are members or associates in two different law firms representing adverse parties, there is nothing unethical, perse, in the representation. . . ." 43 Ala. Law. 197-98 (1982). Although the opinion does not mention *Page 715 
the vicarious disqualification rule of DR 5-105 (D), it applies much the same analysis used in Silver Chrysler and Hanon, cautioning affected parties to be mindful of ethical considerations but concluding that the situation "involve[s] a fact determination and an exercise of judgment to be made in each individual case." 43 Ala. Law. at 197.
In our judgment, the evidence adduced at the hearing on motion for new trial clearly rebutted any presumption that Smith had access to the confidential information imparted by the appellant to Crown-over and/or Mountain. We therefore conclude that appellant received the fair and impartial trial to which he was entitled.
This case is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.