Filed 12/22/23  P. v. Splawn CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ISAIAH THOMAS SPLAWN,<br><br>    Defendant and Appellant. | C097554<br><br>(Super. Ct. No. 18CR26884) |

The People appeal from an order recusing the office of the Amador County District Attorney (district attorney's office) from prosecuting this case against defendant Isaiah Thomas Splawn.  The People contend the trial court abused its discretion and violated Penal Code section 1424[1] when it recused the district attorney's office, on its own motion and without providing notice or an opportunity to oppose the motion, and did

---

[1]  Further undesignated statutory references are to the Penal Code.

so not because of a conflict of interest that would render it unlikely that defendant would be treated fairly, but rather because of an "appearance of [] impropriety" arising out of certain misstatements made by the assigned prosecutor, Chief Assistant District Attorney Sherri Adams. In response, defendant argues: (1) the challenged recusal order is not appealable; (2) section 1424 does not apply because the trial court acted on its own motion and therefore acted pursuant to Code of Civil Procedure section 128; and (3) even if section 1424 applies, the order is supported by substantial evidence and there was no abuse of discretion.

We conclude the challenged recusal order is appealable and that the trial court abused its discretion in issuing the order. Section 1424 governs the recusal of a prosecutor in a criminal matter. (*Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 105 (*Spaccia*).) Setting aside the procedural deficiencies asserted by the People, and even assuming prosecutor Adams' misstatements "evidence a reasonable possibility that the [district attorney's] office may not exercise its discretionary function in an evenhanded manner," in order to justify recusal, the conflict must be "so grave as to render it unlikely that defendant will receive fair treatment" in the criminal proceedings. (*People v. Conner* (1983) 34 Cal.3d 141, 148 (*Conner*).) The trial court made no such finding. And any implied finding is completely unsupported by this record.

Accordingly, we reverse the recusal order.

BACKGROUND

The facts of defendant's alleged crimes are not relevant to this appeal, nor are the specific charges. It suffices to say that defendant was charged with seven felonies, including three counts of forcible rape, with great bodily injury enhancements alleged with respect to six of these offenses.

On October 13, 2022, the trial court held a trial setting conference. Matthew Bishop appeared on behalf of defendant and informed the trial court that he would be available for trial the following September or October. Deputy District Attorney Steven

2

Conklin appeared on behalf of the People, but asked for a one-week continuance for trial setting, indicating that the case would be handled by a different prosecutor (Adams), who was in trial in another courtroom. Bishop responded that he would leave the request for a continuance "to the Court's discretion," but stated that his appointment to represent defendant in this matter would be "contingent upon this trial date." The trial court stated, "we need to just go ahead and get this set," but indicated that if Adams had a conflict with the date chosen, "we can bring it back." The court then proposed September 12, 2023. Bishop stated: "That will work. I'll make that work." Conklin did not object. The court set that date for trial and also set a date for a final readiness conference.

After the trial setting conference, Bishop drove from the courthouse in Amador County to his office in Napa County. Meanwhile, Conklin conferred with Adams concerning the setting of the trial date. According to Adams, based on this conversation, she believed the trial court "invited her to bring the matter back the following week if necessary" and that Bishop "was amenable to this."

That afternoon, Adams filed an ex parte motion to place a new trial setting conference on calendar for October 20, 2022, at 1:30 p.m. The motion stated that "[d]efense counsel has been notified and is in agreement" with that date and time. Bishop had not been notified and had not agreed to that date and time. Nevertheless, based on Adams' representations, the ex parte motion was granted about an hour later, about the time Bishop returned to his office.

When Bishop learned about the new court date, he attempted to e-mail Adams to inform her that he had not been contacted about her ex parte motion, had not agreed to it, and had "a longstanding medical appointment" at the time she unilaterally selected. Bishop accused "someone" at the district attorney's office (the ex parte motion was not signed by Adams, but rather by someone else on her behalf) of "playing fast and loose with the truth" and "commit[ing] a fraud/misrepresentation on a court/tribunal." Bishop also indicated he would be seeking sanctions. The e-mail was returned as undeliverable,

3

so he attempted to forward it to an alternate e-mail address, which also came back undeliverable. The message was then faxed to the district attorney's office later that night.

The next day, October 14, Bishop filed an objection to the ex parte motion and asked that the order placing the matter on calendar be stricken, arguing that it was procured by false representations amounting to a fraud on the court. Three days later, Adams responded to Bishop's e-mail. She took issue with Bishop's accusation of fraud, stating that she filed the ex parte motion "based on the court's invitation for the People to 'bring it back' " and that she believed clerical staff called Bishop's office to notify him. Adams also apologized "for any confusion."

Bishop responded to Adams' e-mail the same day. He disputed that anyone called his office on October 13 to seek out his agreement to an October 20 court date. Bishop also reiterated his position that the statements made in the ex parte motion were "patently false." Bishop further chastised Adams for not offering to re-set the date once she was notified that he had a medical appointment on October 20. Bishop's response concluded: "I consider your actions under-handed and unscrupulous. Your concern is that you simply got caught. As this case starts out with major distrust, please be advised that from this date forward, any communications with this office must be placed in writing to avoid future 'confusion.' "

On October 20, Bishop and Adams appeared before the trial court. Bishop recounted much of the foregoing, asked that the matter be continued, and informed the trial court that he would be filing a sanctions motion. Adams was not asked to address the court and did not do so. The matter was continued to a later date.

On October 31, Bishop filed an application for a protective order, accusing Adams of prosecutorial misconduct based on making knowingly false representations to the trial court. Bishop sought an order directing her not to do so in the future. The stated purpose of seeking this order was to allow Bishop to seek sanctions under Code of Civil

4

Procedure section 177.5 for " 'violation of a lawful court order' " in the event of further misrepresentations.

On November 4, the People filed an opposition to the request for a protective order. In the opposition, the People argued that while the transcript of the October 13 trial setting conference "does not appear to reflect an agreement" by Bishop to come back to court on October 20 at 1:30 p.m., Adams' conclusion to the contrary was "not totally off-base," adding: "Some level of confusion over the matter is understandable in light of the fact that Ms. Adams was in trial on another matter and had to rely on others to convey information. The facts show this was plainly an honest mistake." The People argued this "simple misunderstanding" did not support issuance of a protective order or sanctions.

A hearing on the application for protective order was held on November 17. After argument from both sides, the trial court declined to issue the requested order and instead recused the district attorney's office from prosecuting this case against defendant. The court explained: "Here's the problem I have. There's an allegation that there was some misconduct. There's a denial as to that allegation. There isn't a motion to recuse the district attorney's office, there is a motion for a protective order. I don't know if that would really solve the problem. I'm of a different view because I have a duty to protect the defendant's rights at this point in time. So I think it would be appropriate in this case, because it's a he-said-she-said argument over what happened, but there is the appearance of impropriety. I'm not saying it happened, I'm saying there is an appearance of that. That is of great concern to the Court because of the kind of case it is. It's therefore the Court's decision on its own motion to relieve the district attorney in this case and appoint the Attorney General to handle the matter. [¶] I do that for several reasons. The first reason is it would take a lot of testimony from witnesses as to who said what and who didn't say what. And it still gets down to the matter of credibility where it's very hostile between defense counsel and the district attorney's office. That doesn't serve justice. [Defendant is] involved in a very serious case where his rights need to be protected. And

5

so I think the remedy that's appropriate, because of the appearance of misconduct – and I'm not saying it occurred, I'm not sure it did occur. I know counsel and I think counsel is honest, but an allegation has been made that makes the case a very questionable case."

The People objected to the trial court's decision to recuse "the entire office." The trial court responded: "Well, the problem is this. If she were just another deputy [district attorney], I would consider doing something different, but she's the chief assistant. And so that puts a very awkward strain on other people in your office."

An order recusing the district attorney's office was filed the same day. The People appeal.

DISCUSSION

I

*Appealability*

We begin with defendant's assertion that the challenged recusal order is not appealable. He is mistaken.

Section 1238, subdivision (a)(11) authorizes the People to appeal "[a]n order recusing the district attorney pursuant to [s]ection 1424." Section 1424, subdivision (a)(1) provides in relevant part: "An order recusing the district attorney from any proceeding may be reviewed by extraordinary writ or may be appealed by the district attorney or the Attorney General." The challenged recusal order is "[a]n order recusing the district attorney" (§ 1424, subd. (a)(1)) and is therefore appealable.

Nevertheless, defendant argues the order was not issued "pursuant to [s]ection 1424" within the meaning of section 1238, subdivision (a)(11) because section 1424 requires a noticed motion that is served on both the district attorney and the Attorney General at least 10 court days before the motion is heard, as well as other procedural requirements. (§ 1424, subd. (a)(1).) Here, however, no such motion was filed and none of the procedures set forth in section 1424 were followed. Instead, the trial court recused the district attorney's office on its own motion and did so, defendant argues, under Code

6

of Civil Procedure section 128, subdivision (a)(5).[2] Defendant accordingly posits a dichotomy between recusal orders issued following a noticed motion complying with section 1424, which are appealable, and recusal orders issued on the trial court's own motion without complying with section 1424, which he claims are not appealable.

Such a dichotomy finds no support either in the statutory language or in logic. Although section 1238, subdivision (a)(11) makes appealable a recusal order issued "pursuant to [s]ection 1424," that very section clarifies that any "order recusing the district attorney from any proceeding . . . may be appealed by the district attorney or the Attorney General." (§ 1424, subd. (a)(1).) This is such an order regardless of whether the procedural requirements of section 1424 were satisfied. Indeed, it would defy logic to require compliance with section 1424 in order for the People to challenge a recusal order under that provision. Moreover, as we explain immediately below, the standard set forth in section 1424 governs the recusal of a prosecutor in a criminal proceeding. Although the trial court here applied the wrong standard, suggesting it believed it was not proceeding under section 1424, that is of no moment. It would be anomalous, to say the least, to conclude this recusal order is not appealable solely because the court might have erroneously proceeded under the wrong statute. The challenged order is "[a]n order recusing the district attorney" within the meaning of section 1424 regardless of what the trial court might have believed at the time the order issued and is appealable as such.

---

[2] This provision delineates several inherent powers of California courts, including the power "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Code Civ. Proc., § 128, subd. (a)(5).)

7

## II

*Abuse of Discretion*

Turning to the merits, the People contend the trial court abused its discretion and violated section 1424 when it recused the district attorney's office, on its own motion and without providing notice or an opportunity to oppose the motion, and did so not because of any asserted conflict of interest that was likely to render defendant's trial unfair, but rather because of an "appearance of impropriety." In response, defendant argues section 1424 does not apply because the court acted on its own motion, and even if section 1424 applies, the order is supported by substantial evidence and there was no abuse of discretion. We conclude the trial court abused its discretion and reversal of the recusal order is required. Even disregarding the procedural improprieties clearly apparent here, the required findings were not made. Further, the required findings could not have properly been made even had the trial court purported to make them, as the findings required under section 1424 are completely unsupported by the evidence in this case.

Prior to the enactment of section 1424, our Supreme Court held a trial court possesses authority under Code of Civil Procedure section 128 to recuse a prosecutor "when the judge determines that the [prosecutor] suffers from a conflict of interest which might prejudice him [or her] against the accused and thereby affect, *or appear to affect*, his [or her] ability to impartially perform the discretionary functions of his [or her] office." (*People v. Superior Court (Greer)* (1977) 19 Cal.3d 255, 269, italics added, superseded by statute as stated in *Conner*, *supra*, 34 Cal.3d at p. 147; see also *People v. Vasquez* (2006) 39 Cal.4th 47, 58-59 (*Vasquez*).) Thus, under the *Greer* standard, in addition to avoiding conflicts that actually affect the prosecutor's ability to be impartial, "any significant appearance thereof must likewise be avoided." (*Younger v. Superior* (1978) 77 Cal.App.3d 892, 897, superseded by statute as stated in *Spaccia*, *supra*, 209 Cal.App.4th at p. 103.)

In 1980, the Legislature enacted section 1424, prohibiting the granting of a motion to disqualify a district attorney "unless a conflict exists that would 'render it unlikely that the defendant would receive a fair trial.' " (*Spaccia*, *supra*, 209 Cal.App.4th at pp. 103-104.) Section 1424 " 'was enacted . . . "in response to the substantial increase in the number of unnecessary prosecutorial recusals under the 'appearance of conflict' standard set forth in [*Greer*]." ' " (*Spaccia,* at p. 103; *Vasquez*, *supra*, 39 Cal.4th at p. 59.) As our Supreme Court has made clear, "the Legislature superseded the *Greer* standard by enacting section 1424" and "necessarily rejected that standard for all purposes." (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 416, 417.)

We must therefore reject defendant's assertion that the *Greer* standard, not the standard set forth in section 1424, applies to this case. In that regard, defendant is simply mistaken. "Our Supreme Court and Courts of Appeal . . . have routinely acknowledged that, after the enactment of . . . section 1424, neither a district attorney nor an entire district attorney's office could be recused for a mere appearance of impartiality, but could only be recused when there existed an actual likelihood of unfair treatment." (*Spaccia*, *supra*, 209 Cal.App.4th at p. 104; see *Stark v. Superior Court, supra*, 52 Cal.4th at p. 416; *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 719 (*Haraguchi*); *Vasquez*, *supra*, 39 Cal.4th at p. 59; *Hambarian v. Superior Court* (2002) 27 Cal.4th 826, 834); *People v. Hamilton* (1989) 48 Cal.3d 1142, 1155-1156; *Conner*, *supra*, 34 Cal.3d at p. 147; *People v. Pomar* (2023) 95 Cal.App.5th 504, 515; *People v. Lastra* (2022) 83 Cal.App.5th 816, 820-821; *People v. Neely* (1999) 70 Cal.App.4th 767, 776; *People v. Lepe* (1985) 164 Cal.App.3d 685, 687.)

Section 1424 sets out a two-part test for recusal of a prosecutor in a criminal matter: " '(i) is there a conflict of interest?; and (ii) is the conflict so severe as to disqualify the district attorney from acting?' " (*Hambarian v. Superior Court*, *supra*, 27 Cal.4th at p. 833.) "Under the first part, a court must determine whether a conflict exists, that is, whether 'the circumstances of a case evidence a reasonable possibility that the

9

[district attorney's] office may not exercise its discretionary function in an evenhanded manner.' [Citations.] If such a conflict exists, the court must further determine whether the conflict is ' " 'so grave as to render it unlikely that defendant will receive fair treatment during all portions of the criminal proceedings.' " ' " (*Haraguchi*, *supra*, 43 Cal.4th at p. 713.) "For a conflict to be grave enough to warrant recusal under section 1424, 'the potential for prejudice to the defendant—the likelihood that the defendant will not receive a fair trial—must be real, *not merely apparent*, and must rise to the level of a *likelihood* of unfairness.' " (*People v. Pomar, supra*, 95 Cal.App.5th at p. 515, italics added.) Moreover, " '[t]he "threshold necessary for recusing an entire office is higher than that for an individual prosecutor." ' [Citation.] Indeed, 'recusal of an entire prosecutorial office is a serious step, imposing a substantial burden on the People, and the Legislature and courts may reasonably insist upon a showing that such a step is necessary to assure a fair trial.' " (*Ibid.*)

We review a trial court's determination of these questions for abuse of discretion. (*Vasquez, supra*, 39 Cal.4th at p. 56.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi, supra*, 43 Cal.4th at pp. 711-712, fns. omitted.)

*People v. Hamilton, supra*, 48 Cal.3d 1142 is instructive. There, the defendant contacted the district attorney without defense counsel's knowledge or consent. After defense counsel was notified about the contact, counsel sought and obtained an order forbidding such contact in the future and also filed both a recusal motion and a complaint with the State Bar. In arguing the motion, counsel argued the complaint filed with the State Bar "might make the district attorney antagonistic toward defense counsel and his client." (*Id.* at p. 1155.) With respect to the first part of the section 1424 test, our

10

Supreme Court noted: "A conflict justifying recusal exists whenever 'the circumstances of a case evidence a reasonable possibility that the [district attorney's] office may not exercise its discretionary function in an even-handed manner.' " (*Hamilton,* at p. 1155.) Suggesting that part of the test had been met, the court then noted "[t]he trial court nevertheless denied [the] motion" based on the second part of the test, concluding: " 'I cannot find that such a conflict of interest has been shown in this case as would render it unlikely that the defendant would receive a fair trial.' " (*Ibid.*) The court concluded that determination was not an abuse of discretion, explaining "the possibility of hidden bias engendered by defense counsel's complaint to the State Bar is insufficient to overturn the trial court's ruling." (*Id.* at p. 1156.)

Here, a similar "conflict" is at issue. The trial court recused the district attorney's office because of hostility between prosecutor Adams and defense attorney Bishop and an "appearance of impropriety" on the part of Adams, arising from a false statement on her ex parte motion to calendar another trial setting conference, specifically that Bishop had been informed about and agreed to the date and time she chose to calendar that conference. The court did not find any actual misconduct on the part of Adams. However, the first part of the section 1424 test does not refer to misconduct. It refers to conflict. The court viewed the relationship between counsel as "very hostile." We have no basis to disagree with this assessment. But even assuming for the sake of argument only that this satisfies the first part of the test, i.e., "a 'reasonable possibility' of less than impartial treatment" due to hostility between counsel (*Haraguchi*, *supra*, 43 Cal.4th at p. 713), the court made no finding with respect to the second part of the test, i.e., a likelihood that defendant would be treated unfairly during the criminal proceedings. Nor would an implied finding of such a likelihood be supported by the record in this case; indeed, the requisite findings are completely unsupported by the evidence here. Moreover, the court's reference to "appearance of impropriety" suggests it was using the superseded *Greer* standard. "[G]etting the legal standard wrong means that a subsequent

11

decision becomes *itself* a per se abuse of discretion." (*Conservatorship of Bower* (2016) 247 Cal.App.4th 495, 506.)  This is true even where that decision "might very well be reasonable within its own frame of reference . . . because it would still contravene the specific law that grants the discretion in the first place."  (*Ibid.*)

We therefore reverse the recusal order.[3]

DISPOSITION

The recusal order is reversed.

                                                  /s/

                                                  Duarte, J.

We concur:

/s/

Hull, Acting P. J.

/s/

Keithley, J.[*]

---

[3]  This conclusion makes it unnecessary to address the People's additional assertion that the trial court was required to comply with the procedural requirements of section 1424.

[*]Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.